IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI ABDUL SHIHEED,     *

    Plaintiff,     *

v.     *     Civil Action No. GLR-16-3166

WAYNE WEBB, et al.,     *

    Defendants.     *

*****

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Ronald Shoemaker, James Flannery, Bryan Cromwell,[1] James Garofalo, and James Fiorita's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 43).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 106.5 (D.Md. 2018). For the reasons that follow, the Court will grant Defendants' Motion.

---

[1] The Court will direct the Clerk to amend the docket to reflect the correct spelling of Cromwell's name.

[2] Also pending are Plaintiff Yahyi Abdul Shiheed's "Motions of Request Order" (ECF Nos. 39, 42, 48), Motion to Appoint Counsel (ECF No. 47), and Motion for Affidavit (ECF No. 49). In the first Motion, Shiheed asks that Defendants Shoemaker, Flannery, Cromwell, Garofalo, and Fiorita be served with the Amended Complaint. As Defendants were subsequently served with the Amended Complaint and have filed a response, the Court will deny this Motion as moot. In the second Motion, Shiheed claims that Defendants' response is untimely and asks for a ruling on the case. Defendants sought and were granted an extension of time to respond to the Amended Complaint. (See ECF Nos. 40, 41). The Court will, therefore, deny this Motion. In the third Motion, Shiheed expresses his concern that the Court has misplaced his case; he does not request any relief from the Court. Accordingly, the Court will deny this Motion. Shiheed's Motion for Affidavit is simply an affidavit. The Court will, therefore, grant this Motion. Finally, because the Court will grant Defendants' Motion, the Court will deny Shiheed's Motion to Appoint Counsel as moot.

## I. BACKGROUND[3]

Plaintiff Yahyi Abdul Shiheed is a prisoner confined at the North Branch Correctional Institution ("NBCI"), in Cumberland, Maryland. (Compl. at 1, ECF No. 1).[4] In his original Complaint, Shiheed alleges that on August 18, 2016, while he was housed as a pretrial detainee at Jessup Correctional Institution ("JCI") in Jessup, Maryland, unknown correctional officers, members of the "SRT team," assaulted him. (Id.). Shiheed pleads that he was in his cell when he observed Defendants assaulting two other inmates while they were "shaking down" the segregation tiers. (Id.). Shiheed told Defendants to stop. (Id.). Defendants came to Shiheed's cell and advised him that he was next. (Id.). Defendants then tried to close the door slot on his arm. (Id.). Defendants had Shiheed's cell door opened and they "beat [him] up by hitting, kicking[,] and choking" him in his cell. (Id.). Defendants handcuffed Shiheed, took him out of the cell and slammed him onto the tier "bust[ing]" his head and eye. (Id.).

On September 26, 2016, Shiheed sued "the Warden and Assistant Warden because they're in charge of this prison and what happens here at JCI with inmates and they know who entered the prison on 8/18/16 and they refuse to give me the officers names in this brutal assault." (Id. at 5). Defendants Warden Wayne Webb and Assistant Warden Rosette

---

[3] Unless otherwise noted, the facts outlined here are set forth in Shiheed's Complaint, (ECF No. 1), and Amended Complaint, (ECF No. 30). To the extent the Court discusses facts that Shiheed does not allege in his Complaint and Amended Complaint, they are uncontroverted and the Court views them in the light most favorable to Shiheed. The Court will address additional facts when discussing applicable law.

[4] Citations to the Original Complaint refer to the pagination the Court's Case Management and Electronic Case Files ("CM/ECF") system assigned.

Swan filed a Motion to Dismiss or, in the Alterative, for Summary Judgment, (ECF No. 21), which the Court granted. (ECF Nos. 28, 29). Attached to their Motion were documents which identified the correctional officers involved in the August 8, 2016 incident. (Webb & Swan's Mot. Dismiss Summ. J. ["Webb & Swan's Mot."] Ex. 2 at 7, ECF No. 21-3).[5] As a result, the Court granted Shiheed's Motions to Amend the Complaint and Add Defendants and granted Webb and Swan's Motion. (ECF Nos. 28, 29).

On January 25, 2019, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 43). Shiheed filed an Opposition on February 13, 2019. (ECF No. 45). To date, the Court has no record that Defendants filed a Reply.

## II. DISCUSSION

**A.** **<u>Conversion of Defendants' Motion</u>**

Defendants style their Motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any

---

[5] Citations to Exhibit 2 to Webb and Swan's Motion refer to the pagination CM/ECF assigned.

material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must

4

typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting Young v. UPS, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional

5

equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, Shiheed was on notice that the Court might resolve Defendants' Motion under Rule 56 because they styled their Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Shiheed did not file a Rule 56(d) affidavit, nor does he otherwise assert that he needs discovery to properly address Defendants' Motion. Accordingly, the Court will construe Defendants' Motion as one for summary judgment.

**B.** **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.    Analysis**

Defendants raise four arguments in their Motion: (1) failure to exhaust administrative remedies; (2) failure to sufficiently allege an excessive force claim; (3) there

is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law; and (4) qualified immunity. The Court agrees that Shiheed has failed to exhaust his administrative remedies. The Court will, therefore, dismiss his Complaint without prejudice.

Shiheed's suit is subject to the provisions of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (2018), which provides, in pertinent part, that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . , by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[6]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense that a defendant must plead and prove. See Jones v. Bock, 549 U.S. 199, 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, this Court cannot consider a claim that has not been exhausted. See Bock,

---

[6] For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). Under Maryland law, the grievance process applies to a wide variety of claims that arise out of the conditions of confinement, including tort claims of assault and battery against prison officers, even if the grievance process cannot provide a comprehensive remedy for those claims. See McCullough v. Wittner, 552 A.2d 881 (Md. 1989).

549 U.S. at 220. In other words, exhaustion is mandatory. Ross v. Blake, 136 S.Ct. 1850, 1857 (2016). A federal district court, therefore, ordinarily may not excuse a failure to exhaust. Id. at 1856 (citing Miller v. French, 530 U.S. 327, 337 (2000)) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion").

Ordinarily, an inmate must follow required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford, 548 U.S. at 93 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. See Neal v. Goord, 267 F.3d 116, 121–22 (2d Cir. 2001). "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); see also Kitchen v. Ickes, No. DKC-14-2022,

2015 WL 4378159, at *8 (D.Md. July 14, 2015); Blackburn v. S. Carolina, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009), aff'd, 404 F.App'x 810 (4th Cir. 2010).

The PLRA's exhaustion requirement serves several purposes. These purposes include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Bock, 549 U.S. at 219; see Moore, 517 F.3d at 725 (noting that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). Exhaustion requires that prisoners pursue administrative grievances until they receive a final denial of their claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004); Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); see also Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo, 286 F.3d at 1024 (noting that a prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

An inmate need only exhaust "available" remedies. See 42 U.S.C. § 1997e(a). In Ross, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S.Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. Id. at 1856–57. But it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725.

The Ross Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established the "administrative remedy procedure" or "ARP" for use by Maryland State prisoners for "inmate complaint resolution." See generally Md. Code Ann., Corr. Servs. ("CS"), §§ 10-201 et seq. (West 2019); Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). This procedure applies to the submission of "grievance[s]

11

against . . . official[s] or employee[s] of the Division of Correction [("DOC")]." CS § 10-206(a).

A "grievance" includes a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth under state law. See CS § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file an ARP with the Inmate Grievance Office ("IGO") against any DOC official or employee. CS § 10-206(a). But if the prison has a grievance procedure that the IGO approved, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. See CS § 10-206(b). Maryland regulations create an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 et seq. Therefore, Maryland inmates must follow and complete the ARP process before they may file a grievance with the IGO.

The ARP process consists of multiple steps. First, a prisoner is required to file an initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under CS § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In addition, the inmate must file the ARP

request within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

Second, if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame, the prisoner has thirty days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

Third, if the Commissioner of Correction denies a prisoner's appeal, the prisoner has thirty days to file a grievance with the IGO.[7] COMAR 12.02.28.18; CS § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial ARP request; the warden's response to that request; a copy of the ARP appeal filed with the Commissioner of Correction; and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the IGO concludes that the grievance is "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." CS § 10-207(b)(1); see also COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. CS § 10-207(b)(2)(ii). However, if the IGO deems a hearing necessary, an Administrative Law Judge ("ALJ") with the Maryland Office of Administrative Hearings conducts the hearing. See CS § 10-208; COMAR 12.07.01.07–.08.

A decision of the ALJ denying all relief to the inmate is considered a final agency determination. CS § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). If the ALJ concludes

---

[7] If the Commissioner fails to respond, the grievant shall file their appeal within thirty days of the date the response was due. COMAR 12.07.01.05(B)(2).

that the inmate's complaint is wholly or partly meritorious, however, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the ALJ. See COMAR 12.07.01.10(B); CS § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies. See CS § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. See, e.g., Pozo, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Under Maryland law, the grievance process applies to a wide variety of claims that arise out of the conditions of confinement, including tort claims of assault and battery against prison officers, even if the grievance process cannot provide a comprehensive remedy for those claims. See McCullough v. Wittner, 552 A.2d 881 (Md. 1989). Importantly as to Shiheed's claims, the ARP process applies to allegations that correctional officers used excessive force. COMAR 12.02.28.04(A)(7).

Here, the record evidence before the Court reflects that Shiheed failed to exhaust his administrative remedies as to his claim. On August 22, 2016, Shiheed signed an Administrative Remedy Procedure ("ARP") complaint, JCI-1161-16, regarding the incident. (Webb & Swan's Mot. Ex. 2 at 3). The ARP was not marked as received for processing until September 28, 2016. (Id.). Shiheed filed this case on September 15, 2016, indicating in his Complaint that he had filed an ARP but had not received a response from

14

the Warden. (Compl. at 2). On October 14, 2016, Shiheed voluntarily withdrew his ARP complaint. (Webb & Swan's Mot. Ex. 2 at 2). There is no evidence that Shiheed filed a complaint or grievance with the IGO regarding this incident. (Neverdon Decl. ¶ 3, ECF No. 43-7).

Shiheed offers a number of reasons why he did not fully exhaust his administrative remedies, none of which the Court finds availing. First, he avers that he "filed complaints and appeals with the ARP process and with IGO about the assault." (Shiheed Decl. ¶ 2, ECF No. 24-2). Shiheed does not, however, provide copies of these appeals or indicate when they were filed. In addition, as discussed above, the record reflects that Shiheed filed an ARP, but then he voluntarily withdrew it, and that there is no evidence that he filed a grievance with the IGO.

Second, in his unverified Opposition, Shiheed, for the first time, asserts that unspecified staff on an unspecified date "trashed" his submission to the IGO. (Pl.'s Opp'n at 3, ECF No. 45). Because Shiheed makes this assertion for the first time in his unverified Opposition, the Court does not consider it.

Third, Shiheed contends that he was transferred out of JCI in an effort to thwart his pursuit of his administrative remedies. He does not, however, explain how his transfer impacted his ability to pursue his administrative remedies. Administrative remedies remained available to him regardless of where he was housed, and he was entitled to pursue the next step of the administrative process at any point based on either a denial of his claim or a failure to receive a timely response, yet the record demonstrates that he failed to do so.

15

Fourth, he asserts in unverified submissions to the Court that he "received threats that if he didn't let this suit go that he would be assaulted again by officers at a later time." (Pl.'s Opp'n Webb & Swan's Mot. at 4, ECF 24-1; see also id. at 7 ("[A] threatening withdrawal form was brought to plaintiff['s] attention [two] months after ARP [was] properly filed."); Pl.'s Opp'n at 3 (Shiheed was threatened that if he did not sign off on the ARP withdrawal he would be "set up and killed at Jessup.").[8] He does not explain when these threats occurred or who made the threats. Nor does he provide any other context for the threats. Shiheed attempts to explain away his withdrawal of his ARP by making bald and unverified assertions that unspecified correctional staff exerted pressure on him. But Shiheed did not offer these explanations until after Defendants argued that this case should be dismissed because Shiheed failed to exhaust his remedies. Because Shiheed's assertions lack detail, are unverified, and appear to be self-serving, the Court concludes that they do not create a genuine dispute of material fact regarding whether he exhausted his administrative remedies.

Fifth, Shiheed contends that the matter was referred to the Internal Investigation Division ("IID") and that is why his administrative remedy process did not go any further. (Pl.'s Opp'n Webb & Swan's Mot. at 6). When a use of force is referred to the IID for investigation the facility's ARP coordinator is required to notify the inmate that the matter is procedurally dismissed because it is under investigation by the IID and no further action will be taken at the institutional level. The inmate is nevertheless entitled to appeal this

---

[8] Citations to Shiheed's Opposition to Webb and Swan's Motion refer to the pagination CM/ECF assigned.

decision to the Commissioner of Correction. Id. There is no indication in the record before the Court that Shiheed was advised that IID took over the investigation of this case, nor is there any indication that IID took over investigation of the case. A detective at IID was notified of the incident but no case number was assigned and IID did not take over investigation of the use of force. (Webb & Swan's Mot. Ex. 2 at 7, 10–11). Thus, IID did not take over the investigation and the ARP process remained available to Shiheed.

Sixth, Shiheed asserts that having not received a timely response from the Warden, he pursued his rights to appeal the ARP all the way through the IGO. Taking this assertion as true, Shiheed filed this case on September 15, 2016, less than thirty days after the date the initial ARP was signed, which shows that he could not have completed the ARP process prior to filing this case. The Warden had thirty days from the date of the ARP submission to respond, and that time had not yet expired before Shiheed filed the instant case.

In sum, the Court concludes that there is no dispute of material fact that Shiheed failed to exhaust his administrative remedies before filing this lawsuit. Accordingly, the Court will grant Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 43). The Court will dismiss the Complaint without prejudice for failure to exhaust administrative remedies. The Court will also deny Shiheed's "Motions of Request Order" (ECF Nos. 39, 42, 48), deny as moot

Shiheed's Motion to Appoint Counsel (ECF No. 47), and grant Shiheed's Motion for Affidavit (ECF No. 49). A separate Order follows.

Entered this 16th day of July, 2019.  _____/s/_____
George L. Russell, III
United States District Judge